## BYRNE v. WILLIAMS et al.
### No. 3693.

Court of Civil Appeals of Texas. Amarillo.
Dec. 16, 1931.

Rehearing Denied Jan. 13, 1932.

W. D. Benson, Jr., of Lubbock, for appellant.

Alfred M. Scott, of Lubbock, for appellees.

HALL, C. J.

The appellee Williams sued C. A. Jacobson, H. E. Byrne, and W. A. Myrick. He alleged: That he was operating a machine shop at Lubbock, was a mechanic, artisan, and materialman within the meaning of article 16, § 37, of the State Constitution; that about February 14, 1928, defendant Jacobson owned a certain 100 H. P. Nash gas engine and an auxiliary compressor, which are now in the milling plant of the Standard Milling Company at Lubbock; that Jacobson desired to have said machine extensively overhauled and repaired and then installed in the plant of the Milling Company for the purposes of demonstration and sale to the company, and employed plaintiff to supply the necessary repairs, furnish the funds and service for the accomplishment of such end; that he furnished all labor, parts, material, services, and funds, as shown in the itemized account attached to the pleading, for which Jacobson promised to pay when the work was completed and the engine and compressor started; that they were completed and started on or about July 5, 1928.

He alleges, in the alternative, that if he is mistaken as to an agreed price, then that his services were reasonably worth the amount stated in the exhibit. That he was never paid any amount within a reasonable time, which he alleges to be February 8, 1929, nor since said time. That Jacobson verbally agreed at the time he employed plaintiff that, if the Milling Company failed to buy said machine, the plaintiff should have a lien upon the engine and compressor and all accessories to secure the amount due him for labor and material. That there is due him $414.82, together with interest from July 5, 1928.

That on or about March 8, 1928, Jacobson executed a chattel mortgage upon said engine and equipment in favor of the defendant H. E. Byrne to secure what is recited to have been an indebtedness of $1,000, evidenced by Jacobson's personal note due Byrne April 8, 1928. That plaintiff is informed and believes that Jacobson was not indebted to Byrne in any sum exceeding $400. That, at the time such mortgage was executed, Byrne had extended the full amount of credit for which the mortgage was taken as security, and therefore, if the lien is otherwise valid, it was given for a pre-existing indebtedness, either in whole or in part, and that Byrne

was fully aware of the contract with plaintiff and plaintiff's unpaid claim and lien upon the property, for which reason said chattel mortgage, if otherwise valid, is inferior and subordinate to the lien which plaintiff has against the property.

That thereafter, Byrne proceeded, or at least pretended, to foreclose his pretended mortgage lien upon the property by causing his attorneys to conduct some sort of an extrajudicial sale under the power conferred by said mortgage in which his attorneys as agents pretended to buy said property for Byrne, which was afterwards sold by the latter to the defendant W. A. Myrick and transferred by bill of sale dated December 17, 1928. That said Myrick is claiming title adverse to plaintiff's lien and claim, and the other defendants are asserting some character of right or title to the property adverse to plaintiff.

That Byrne and his agents failed to comply with the terms of the chattel mortgage in foreclosing and pretending to sell the property, and, at the time Myrick bought it, he had knowledge of the plaintiff's claim and lien and the nature thereof. That said property is and always has been of value greater than $500. That plaintiff has at all times kept said engine constantly in his possession as security for his debt.

He prays for judgment for the amount of his claim and for foreclosure of the lien, and in the alternative against Byrne and Myrick for conversion.

Byrne answered by general demurrer, several special exceptions, and alleged that plaintiff had furnished the material, repairs, and done the work for the purposes of demonstrating the engine at the milling plant, and that said work was done for the purposes of installing the engine for demonstration purposes only, which was not such work as was contemplated by section 37, art. 16 of the Constitution.

It is further alleged that, by the contract between Williams and Jacobson, the former was to have a verbal chattel mortgage upon the engine to secure his claim, which mortgage was accepted in lieu of the constitutional lien, and he is thereby estopped from claiming his constitutional lien.

Byrne further alleges that on March 8, 1928, he advanced money and other valuable consideration for which he received a note in the sum of $1,000, secured by a chattel mortgage on the engine, which said note and mortgage were executed by Jacobson, who was doing business under the name of the Nash Gas Diesel Engine Company. That Jacobson represented that said engine was clear and free from all indebtedness and liens and that he, Jacobson, was the sole and complete owner of said engine, upon which representations Byrne accepted said

note and mortgage; otherwise he would not have advanced any money under any circumstances. That according to the mortgage records of Lubbock county at that time, said engine was clear and free of all liens, and that he had no knowledge whatever of plaintiff's claim. That plaintiff did not have any lien of record, nor did he have possession of said engine. He further alleges that if plaintiff ever had any character of lien he has lost and waived the same by failing to perfect it in accordance with the statutes of Texas, or to give notice, such as is required by law.

The case was submitted to a jury upon special issues as follows:

"(1) Did the defendant Byrne have notice of the claim of plaintiff Williams prior to acceptance of the mortgage from Jacobson to Byrne?" This was answered in the affirmative.

"(2) What is the value of labor performed and parts furnished, if any, by plaintiff Williams on the engine itself and its necessary auxiliary units?" Answered $406.64.

"(3) Did the plaintiff Williams retain possession of the engine at all times?" Answered "Yes."

Judgment was rendered that plaintiff take nothing against Myrick; that he recover of Byrne and Jacobson, jointly and severally, $473.11; and that Byrne recover the same amount of Jacobson, all with interest at six per cent.

By the first proposition, appellant insists that the judgment should be reversed because of improper argument made by plaintiff's attorney to the jury. The language objected to is as follows:

"Gentlemen of the jury, law and justice does not always jibe in a law suit, but I believe it will do so in this case. Let's look at the justice in this case. We have poor old Williams here, a laborer, with grimey and greasy hands from toil in his machine shop. I believe he has to work harder for his money than anybody, not excepting lawyers, and God knows that they have to work hard enough. I have read in the Good Book somewhere that a laborer is worthy of his hire. Now, gentlemen, the important issue in this case is Special Issue No. One. If Williams is to get his hire you must answer this Special Issue No. One Yes. If you answer it no, he will lose everything, and if you answer it yes, he will receive his hire. * * *

"Gentlemen, Jacobson is a transient person, he goes from place to place, he doesn't live anywhere. Look at these depositions. They were taken in New York, and God knows where we could find him now. No, a judgment against Jacobson is not worth a cent, and Williams will lose his labor and material, and get nothing unless you answer

Special Issue No. One like I think you will answer it. Yes."

As shown above, by the first issue the court inquired whether Byrne had notice of plaintiff's claim prior to the time he accepted the mortgage from Jacobson.

This case involves not only the question of notice, either actual or constructive, but the issues of the application of the Constitution and the priority of liens, as well as compliance with the registration laws.

■■ In view of the conflicting testimony and the mass of evidence involved, it is our opinion that the jury would not have known the effect of the answer made to the first issue if they had not been informed by plaintiff's counsel in the language quoted above. The language is further objectionable because it appeals to the prejudice of the jury and is an effort to get a favorable finding based upon the statement in the Bible, and because Williams is a "grimey and greasy" handed toiler in a machine shop, rather than upon the facts put in issue by the pleadings and elicited from the witnesses.

In Floyd v. Fidelity Union Casualty Co. (Tex. Com. App.) 39 S.W.(2d) 1091, it is held that the appellant does not have the burden of showing that the use of improper argument by appellee's counsel was calculated to prejudice his rights; that the showing of such error requires a reversal if there is any reasonable doubt of harmful effect; and that whether there is a reasonable doubt as to the harmful effect of the argument objected to presents a question of law; that in such case, the burden is upon appellee to show that no prejudice resulted from the use of the improper argument.

In McFaddin v. Hebert, 118 Tex. 314, 15 S.W.(2d) 213, 217, in discussing the case of Railway Co. v. Harling (Tex. Com. App.) 260 S. W. 1016, Judge Critz says: "A careful reading of Judge Chapman's opinion in the Harling Case, supra, will show that he merely held that, when the special issues submitted are such that men of ordinary intelligence would be presumed to know the legal effect of their answers, no injury could result by counsel telling them something they already know. This holding was then, and still is, the law of this state. However, in a case like the one at bar, when the issues are such that ordinary men are not presumed to know the legal effect of the answers, then the argument of counsel telling them the legal effect of such answers, coupled with the other circumstances, would, as a matter of law, probably result in injury to the opposite side, and is reversible error."

In the same case, Judge Critz says: "Clearly, the prime object, purpose, and intent of the law for submitting cases on special issues is to remove the jury from any bias in favor of, or prejudice against, either party to the suit, to relieve them from the duty of directly passing on who shall prevail in the suit, and to make it the duty of the jury to answer each question truly as they find the facts to be from the evidence, without regard to what the result of their answers may be. If the court or the attorney, or any one else, is allowed to tell the jury the legal result of the answers, and to appeal to them in argument to so frame their answers so as to accomplish a result rather than to answer the issues truly as they find the facts to be from the evidence, or if the jury is permitted to agree on the result, and then designedly frame the answers to accomplish such result, the law providing for special issue verdicts would be an idle and vain thing."

Bell v. Blackwell (Tex. Com. App.) 283 S. W. 765; 3 Tex. Jur. 1260; Texas Employers Insurance Ass'n v. Davies (Tex. Civ. App.) 6 S.W.(2d) 792; South Plains Coaches v. Behringer (Tex. Civ. App.) 4 S.W.(2d) 1003; Rowley v. Braly (Tex. Civ. App.) 286 S. W. 241; Hanover v. Hines (Tex. Civ. App.) 11 S.W.(2d) 621; D. & H. Truck Line v. Lavallee (Tex. Civ. App.) 7 S.W.(2d) 661, 664.

For the reasons stated, we think the court erred in overruling the motion for new trial. This will require a reversal of the judgment.

By the next proposition, the appellant insists that the court erred in rendering judgment in favor of appellee in any amount; thereby assuming and concluding that appellee had a constitutional lien as against appellant which was prior to appellant's chattel mortgage lien, when it appears that appellee did nothing to perfect his lien under the statutes.

The next proposition raises the question of the application of the parol evidence rule. In the mortgage given by Jacobson to Byrne, there is a recitation that the engine and its accessories are free from all liens and incumbrances. Over the objection of appellant, appellee was permitted to read the depositions of Jacobson to the effect that he told Byrne shortly before the execution of the chattel mortgage that Williams would have a prior lien and would have to be paid first. It is unnecessary to discuss either of these propositions. The judgment does not decree the foreclosure of any lien held by any one upon the property, so the validity and priority of the respective liens are not involved in this appeal.

■ The next complaint is that the affirmative answer of the jury to special issue No. 3, inquiring whether Williams had at all times retained possession of the engine, is not supported by the evidence.

In view of the fact that by virtue of article 16, § 37 of the Constitution, mechanics, artisans, and materialmen have a lien upon articles repaired by them to the extent of the value of their labor and materials furnished,

this inquiry is immaterial. The lien exists without the enactment of any statute, and, although it would seem that article 5503 (Rev. St.) makes continued actual possession of the repaired article a condition precedent to the existence of a lien, the courts have held that possession is not necessary, and the relinquishment of possession is not an extinguishment or waiver of the lien. McBride v. Beakley (Tex. Civ. App.) 203 S. W. 1137; Jines v. Dodson (Tex. Civ. App.) 279 S. W. 557.

■ In view of another trial, we suggest that Williams would not be entitled to the enforcement of a constitutional lien for that part of his claim relating to the installation of the engine. It is only the value of his labor and materials used in repairing the machine for which he is given a constitutional lien. We do not mean to intimate, however, that he would not be entitled to a foreclosure of his verbal chattel mortgage lien as against the owner and Byrne, if the latter bought with notice and further provided that the engine had not become a part of the realty; an issue which we do not discuss.

For the reasons stated, the judgment is reversed and the cause remanded.