**FIRST NATIONAL BANK IN DALLAS et al., Petitioners,**

v.

**WHIRLPOOL CORPORATION, Respondent.**

**No. B–4400.**

Supreme Court of Texas.

Dec. 4, 1974.

Rehearing Denied Jan. 15, 1975.

Coke & Coke, Earnest E. Figari, Jr., and Robert M. Roller, Paul H. Stanford, Dallas, for petitioners.

Ungerman, Hill, Ungerman, Angrist, Dolginoff & Teofan, Robert C. McGuire, Dallas, for respondent.

DANIEL, Justice.

This case concerns the validity and priority of statutory and constitutional materialman's liens sought to be foreclosed by Whirlpool Corporation to satisfy a balance due on electric ranges, electric refrigerators, dishwashers, and garbage disposals which it furnished for installation in the construction of a Dallas apartment complex. Both the validity and priority of Whirlpool's asserted liens are challenged by petitioners, First National Bank in Dallas, the holder of a prior deed of trust, and Jo Anna R. Kaspar, a subsequent purchaser thereunder. In a non-jury trial, the district court found that Whirlpool had superior constitutional and statutory materialman's liens upon the appliances and ordered removal and foreclosure. The court of civil appeals affirmed, basing its judgment solely upon the statutory lien. 502 S.W.2d 185. Although agreeing in part with the opinion of the court of civil appeals, its judgment is reversed and the judgment of the trial court is reformed.

Beckwood, Inc., which proposed to build the Greenock Acres Apartments upon land owned by the corporation, obtained financing from First National Bank in Dallas on a note signed by the company and its owner, Arthur W. Beck, Jr., for a loan com-

mitment in the principal sum of $1,850,000 on July 29, 1969. In conjunction with the note and as security for the bank's loan, Beckwood, Inc. executed a deed of trust covering the realty upon which the apartments were to be built as well as all subsequent improvements to be made upon or added to the property. The deed of trust was recorded July 31, 1969.

■ Thereafter, when the apartments reached the appropriate stage of construction, The Beck Companies, contractor for Beckwood, Inc., ordered the subject appliances from Whirlpool. The trial court found that the following deliveries were made to the apartment project by Whirlpool during the period from January 1970 through May 1970: 90 garbage disposals, 138 dishwashers with accompanying panels, 86 electric ranges, and 77 electric refrigerators. Before filing its lien, Whirlpool had made deliveries of appliances amounting to $39,079.97, of which $29,144.95 had been paid. The unpaid balance of $9,935.-02 is the cause of this litigation. Whirlpool made its last delivery of appliances on May 8, 1970, and on September 3, 1970, filed its affidavit claiming a materialman's lien. It sent two copies of the affidavit to the owner of the property, Beckwood, Inc. We agree with the court of civil appeals that Whirlpool fulfilled the notice requirements of Article 5453 [1] for the perfection of a statutory materialman's lien as an original contractor. Although The Beck Companies superficially occupied the role of original contractor for the owner, Beckwood, Inc., and Whirlpool supplied the appliances to The Beck Companies, Whirlpool was entitled to the status of original contractor under the Sham Contractor Statute, Article 5452–1. Beckwood, Inc. was one of the companies owned by The Beck Companies and all were effectively controlled by Arthur W. Beck, Jr. Accordingly, under Article 5452–1, Whirlpool

is "deemed to be in a direct contractual relationship with the owner." See discussion of this relationship and result in the opinion of the court of civil appeals, 502 S.W.2d 185, 194–195.

As a result of default upon the note by Beckwood, Inc., the bank foreclosed its deed of trust and bought in the property on December 1, 1970. In January of 1971, the bank sold the property to Jo Anna R. Kaspar, once again taking a deed of trust, which it now holds from Kaspar for the purchase price of the property.

We agree with the court of civil appeals that Whirlpool has a valid and superior statutory lien on the dishwashers and disposals, but disagree as to the refrigerators and ranges. On the latter items, Whirlpool also claims, and the trial court granted, a constitutional lien which the court of civil appeals did not pass upon. Therefore, we must examine the contentions of the parties as to both types of liens.

### The Statutory Lien

■ Any statutory lien of Whirlpool, based upon the record in this case, must arise under the Hardeman Act, Article 5452 et seq. Article 5452 provides in part:

"1. Any person or firm . . . who may . . . furnish labor or material: (a) for the construction or repair of any house, building or improvement . . . under or by virtue of a contract with the owner . . . or his . . . contractor . . .; upon complying with the provisions of this Chapter shall have a lien on such house, building, fixtures, improvements . . . and shall have a lien on the lot or lots of land . . . to secure payment: (a) for the labor done or material furnished or both for such construction or repair . . . ."

---

[1]. Unless otherwise noted, all statutory references are to Vernon's Annotated Texas Revised Civil Statutes.

"2. For the purposes of this Act, the following definitions shall apply:

". . .

"b. The words 'material,' 'furnish material,' or 'material furnished' as used in this Act are to be construed to mean any part or all of the following:

"(1) Material, machinery, fixtures or tools incorporated in the work, or consumed in the direct prosecution of the work, or ordered and delivered for such incorporation or such consumption." [2]

From the very nature of the Hardeman Act, as indicated by its definition of terms, it is intended to encompass realty and such personal property as has been incorporated in or consumed in the construction or repair thereof or delivered for such purposes.

■ The refrigerators furnished by Whirlpool are connected with the realty only by electrical cords which are plugged into 110 volt electrical outlets. Likewise, the ranges are associated with the realty only by electrical cords which are plugged into 220 volt electrical outlets. On the other hand the disposals are installed under the kitchen sinks by screwing the top of the disposal into the drain outlet of the sink, screwing the bottom of the disposal into the drain pipe, and connecting the disposal to an electrical power source. Each of the dishwashers (with the accompanying dishwasher panel) is installed in a place provided under the kitchen cabinet by connecting the dishwasher to the underside of the cabinet top with several screws, connecting it to a water pipe and a drain pipe, and plugging it into an electrical outlet. There was evidence that the dishwashers and disposals were intended to remain permanently as a part of the building until they wore out. They were fixtures incorporated into the structure of the building and were thus subject to the Hardeman Act lien. We think the test applicable to

this type of property was properly stated in McConnell v. Frost, 45 S.W.2d 777, 780 (Tex.Civ.App.1937, writ ref.), as follows:

"Whether a chattel attached to permanent improvements has become a part thereof depends on the intention with which the fixture is annexed or put into position, and this intention is to be inferred from the nature of the article affixed, the relation and situation of the party making the annexation and the policy of the law in relation thereto, the structure and mode of the annexation, and the purpose or use for which the annexation is made. If from all these circumstances it appears to be the intention of the party making the annexation that it be permanent, or that it shall so remain annexed until it has become worn out, then it is a part of the permanent improvements; otherwise it is not."

■ The refrigerators and ranges, which were not built into or in any other manner affixed or incorporated in the work (construction of the building), fall in the same category as floor lamps, irons, television sets and other chattels which are connected by cords and plugs into an electrical outlet. One of Whirlpool's witnesses compared them to television sets. Merely plugging in an electrical cord is simply not the "incorporation" or "consumption" envisioned in the Act. Such items have not lost their identity as chattels. This was the holding of the Oregon Supreme Court in a case involving the legal character of similar electric ranges and refrigerators. Elliott v. Talmadge, Trustee, 207 Or. 428, 297 P.2d 310. The annotations under this case in 57 A.L.R.2d 1099 (1956), indicate that this is the majority rule in other jurisdictions.

As to dishwashers and disposals attached to the realty as in the present case, the Oregon Supreme Court drew the same distinction which we have adopted between

2. At the time applicable to this case, paragraph 2(d) of Article 5452 defined "work" as, "The work shall be construed as any construction or repair referred to in paragraph 1 of this Article." Acts 1961, 57th Leg., p. 863, ch. 382, Sec. 1.

them and plugged-in electrical ranges and refrigerators, holding that the dishwashers and disposals were sufficiently annexed to be subject to a materialman's lien. Builders Appliance Supply Company v. A. R. John Construction Company, 253 Or. 582, 455 P. 2d 615 (1969).

This is not to say that there is no statutory lien available to the supplier of chattels, such as the ranges and refrigerators, whose status as personalty has not been altered. Chapter 9 of the Texas Business and Commerce Code, V.T.C.A., provides a procedure for perfecting liens on this type of personal property.

*The Constitutional Lien*

■ Having held that the electric refrigerators and ranges are not subject to the statutory lien, the question remains as to whether Whirlpool has a constitutional lien on these chattels as held by the trial court. Article XVI, § 37 of the Texas Constitution, Vernon's Ann.St., provides:

"Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens."

It is well settled that the above provision grants a lien which is self-executing and exists independently and apart from any legislative act. Hayek v. Western Steel Co., 478 S.W.2d 786 (Tex.1972); Strang v. Pray, 89 Tex. 525, 35 S.W. 1054 (1896). Although the constitutional lien, as it relates to realty and improvements attached thereto, has been extensively litigated and its scope fairly well defined, such has not been the history of the constitutional lien

as it relates to chattels. There have been few cases dealing with the repair of an "article"[3] and even fewer dealing with "articles made." Those cases which have upheld constitutional liens on "articles made" have been limited to articles fabricated under specifications for the purchaser rather than articles manufactured for sale on the open market. In Wichita Falls Sash & Door Co. v. Jackson, 203 S.W. 100 (Tex.Civ.App.1918, no writ), a constitutional lien was upheld for the value of labor and materials involved in making counters and other articles for a cafe in accordance with specifications of the lessee. In Huttig Sash & Door Co. v. Stitt, 218 F. 1 (5th Cir. 1914), millwork articles "were manufactured pursuant to details furnished to him from the plans and specifications of the particular building . . .." Likewise, in Reeves v. York Engineering & Supply Co., 249 F. 513 (5th Cir. 1918, cert. denied, 248 U.S. 584, 39 S. Ct. 182, 63 L.Ed. 433), the ice and refrigeration machinery was fabricated for a particular project according to the purchaser's specifications.

■ We have been cited to no case, and have found none, in which the Texas constitutional lien was held to apply to the manufacture of articles for sale by the manufacturer to the general public. With respect thereto, the manufacturer is the party for whom the article is originally made, and in its hands the articles are subject to the constitutional lien granted mechanics, artisans and materialmen for the value of their labor done thereon, or material furnished therefor. From the record in this case, it appears that Whirlpool's refrigerators and ranges were made to Whirlpool's specifications by Whirlpool's laborers and with materials furnished by its materialmen. Whirlpool was neither the laborer nor the materialman contemplated for pro-

3. *E.g.*, Lintner v. Neely, 97 S.W.2d 349 (Tex. Civ.App.—El Paso 1936, writ dism'd) (automobile); McConnell v. Frost, 45 S.W.2d 777 (Tex.Civ.App.—Waco 1932, writ ref'd) (cyclorama); Byrne v. Williams, 45 S.W.2d 336 (Tex.Civ.App.—Amarillo 1931, writ ref'd) (motor and compressor); McBride v. Beakley, 203 S.W. 1137 (Tex.Civ.App.—Amarillo 1918, no writ) (automobile).

268 268

tection by our constitutional lien. If we were to hold that Whirlpool had a constitutional lien upon these appliances for the value of "material furnished therefor," then every sale of goods by a manufacturer would result in a constitutional lien. The difference between manufacturer of items for sale to the public and special fabrications is noted in both *Huttig,* and *Reeves, supra.* In *Huttig* (involving specially prepared millwork for a particular structure), the court said:

"Materials manufactured and supplied in such circumstances are to be regarded as furnished, *not as a manufacturer or dealer furnishes from his stock goods to a purchaser, without regard to their destination or the use to which ultimately they may be put by the purchaser,* but for the purpose of being used in the particular building, the plans and specifications presumptively exclusively applicable to which were conformed with in their manufacture and preparation." 218 F. at 6. (Emphasis supplied.)

In *Reeves, supra,* the court said:

"It is contended that, if it should be held that a lien exists in this case [on specially fabricated refrigeration machinery], it would be necessary to make a like holding in every instance where machinery was sold by a manufacturer to a dealer, or by a dealer to an individual. Neither proposition is sound. It is easily to be conceived that a lien would follow a sale in one case, when the sale would not have that effect in another. . . . *If the sale is in the course of business, and without reference to any particular improvement, no lien results, unless it is specifically retained."* 249 F. at 517. (Emphasis supplied.)

■ We hold that the constitutional lien on manufactured chattels is available to the manufacturer only upon articles made especially for a purchaser pursuant to a special order and in accordance with the purchaser's plans or specifications. The trial court erred in holding that Whirlpool had a constitutional lien on the articles sold to

The Beck Companies, and therefore Whirlpool has no constitutional lien on the electric refrigerators or ranges.

### Lien Priority

Petitioners, First National Bank, et al., assert that even as to the disposals and dishwashers the bank's original recorded deed of trust lien is superior to Whirlpool's statutory materialman's lien. The court of civil appeals has properly disposed of this contention in favor of the materialman's lien, and we approve its holding. Article 5459, provides:

"The lien herein provided for shall attach to the house, building, improvements or railroad for which they were furnished or the work was done, *in preference to any prior lien or encumbrance or mortgage* upon the land upon which the houses, buildings or improvements, or railroad have been put, or labor performed, and the person enforcing the same may have such house, building or improvement, or any piece of the railroad property, sold separately; provided, any lien, encumbrance or mortgage on the land or improvement at the time of the inception of the lien herein provided for shall not be affected thereby, and holders of such liens need not be made parties in suits to foreclose liens herein provided for." (Emphasis supplied.)

The first part of Article 5459 gives the mechanic's and materialman's lien an unqualified preference over any prior liens and allows the mechanic or materialman to have the improvement sold separately. Petitioners contend, however, that the last part of the Article, "provided, any lien . . . on the land or improvement at the time of the inception of the lien herein provided for shall not be affected thereby," makes the bank's prior recorded deed of trust on the land and after acquired improvements superior to Whirlpool's lien. Petitioners' argument is that Whirlpool's preference lien would adversely "affect" the bank's prior lien. We cannot agree with petitioners' contention.

It is well settled that the mechanic's and materialman's lien statutes of this State will be liberally construed for the purpose of protecting laborers and materialmen. Hayek v. Western Steel Co., 478 S.W.2d 786 (Tex.1972); University Savings and Loan Association v. Security Lumber Co., 423 S.W.2d 287 (Tex.1967). The effect of the bank's interpretation of the ambiguous words, "shall not be affected thereby," would attribute to the legislature an intent to nullify the preference which it had just given in clear and unambiguous terms to mechanic's and materialman's liens. This would defeat the clear purpose and intent of Article 5459. The provisions have been harmonized under the rule of long standing that a mechanic's and materialman's statutory lien upon improvements made is superior to a prior recorded deed of trust lien where the improvements made can be removed without material injury to the land and pre-existing improvements, or to the improvements removed. Summerville v. King, 98 Tex. 332, 83 S.W. 680 (1904); Parkdale State Bank v. McCord, 428 S.W.2d 121 (Tex.Civ.App.1968, writ ref'd n.r.e.); Freed v. Bozman, 304 S.W.2d 235 (Tex.Civ.App.1957, writ ref'd n.r.e.). Cf. Sullivan v. Texas Briquette & Coal Co., 94 Tex. 541, 63 S.W. 307 (1901), and Hammann v. H. J. McMullen & Co., 122 Tex. 476, 62 S.W.2d 59 (1933), for the contrary rule when such removals are impossible without material damage. Since there was evidence in the instant case clearly supporting the trial court's finding that the disposals and dishwashers (with accompanying panels) "may be removed from such project without injury to the project, the realty, the remaining improvements or the materials themselves," the trial court properly ordered foreclosure of the statutory lien in favor of Whirlpool on such items.

### Effect of Prior Payments

Petitioners contend that Whirlpool should not be entitled to remove those appliances for which payment has been made. To be considered with this contention, however, is the fact that petitioners' answer in this case was only a general denial. Petitioners did not affirmatively plead the defense of payment as required by Rules 94 and 95 of the Texas Rules of Civil Procedure. As stated earlier, Whirlpool made deliveries of the four types of appliances totaling $39,079.97, and $29,144.95 has been paid toward diminishing that total amount, without application to any specific invoices. This left a balance of $9,935.02 due on the account. The record shows that the dishwashers and disposals constituted $15,510.00 of the total account. In the absence of affirmative pleadings of payment or evidence of direction of application of payments to these particular items, Whirlpool is entitled to appropriate payments to such debts due from the debtor as it chooses, provided it "does not make an application that is inequitable and unjust to the debtor." Hodges v. Price, 163 S.W.2d 868, 871 (Tex.Civ. App.1942, writ ref'd w.o.m.). This was held in *Hodges* to be a limitation on the general rule that in the absence of application of payments by the parties themselves the law applies them to the oldest items then due. Payment for the dishwashers and disposals is an affirmative defense which must be specially pleaded and on which the defendant has the burden of proof. It may not be shown under a general denial. Rules 94 and 95, *supra*; Southwestern Fire & Casualty Co. v. Larue, 367 S.W.2d 162 (Tex.1963).

### The Sales Tax as Part of the Lien

Petitioners contend that the materialman's lien does not include the sales tax imposed upon the sale of the appliances. Article 20.021 of V.A.T.S. Tax.-Gen., provides:

"(A) Every retailer shall add the sales tax imposed by Article 20.02 of this Chapter to his sale price and when added the tax shall constitute a part of the price, shall be a debt of the purchaser to

the retailer until paid, and shall be recoverable at law in the same manner as the purchase price."

In view of the statute, the sales tax paid upon the disposals and dishwashers is properly recoverable under Whirlpool's statutory lien, and the tax has been properly included within the total purchase price of $15,510.00 for such items and in Whirlpool's recovery of the full $9,935.02 unpaid balance.

The judgment of the court of civil appeals is reversed and the judgment of the trial court is reformed so as to delete therefrom any foreclosure of liens in favor of Whirlpool Corporation on the electric refrigerators and ranges. As reformed, the judgment of the trial court for foreclosure of Whirlpool's statutory lien upon the disposals and dishwashers to satisfy the amount of $9,935.02 and interest is affirmed.

GREENHILL, C. J., not sitting.