GCI GP, LLC, Appellant

v.

STEWART TITLE GUARANTY
CO., Appellee.

No. 01–07–00372–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

April 9, 2009.

Karen B. Jewell, Lawrence J. Fossi, Fossi & Jewell LLP, Houston, TX, for Appellant.

Charles E. Fitch, Law Office of Charles E. Fitch, P.C., Houston, TX, for Appellee.

Panel consists of Justices TAFT, BLAND, and SHARP.

## OPINION

TIM TAFT, Justice.

Appellant, GCI GP, LLC ("Gulf Coast"), appeals a take-nothing judgment rendered against it upon a traditional motion for summary judgment filed by appellee, Stewart Title Guaranty Company ("Stewart Title").[1] We determine whether the trial court erred in granting Stewart Title's traditional motion for summary judgment. We reverse the judgment and remand the cause.

### Background

In June 1997, Paul Frame bought a house on River Oaks Boulevard in Houston, Texas, and hired Aspen Custom Builders ("Aspen") to do renovations on the home. Aspen worked on the house from 1997 to August 2003, when it stopped due to non-payment.

On August 24, 2001, while the renovations were still ongoing, Frame executed a promissory note in the amount of $4,319,731.39 to Comerica Bank–Texas[2]

---

1. The judgment in this cause was rendered against Gulf Coast Interests, Inc. Appellant GCI GP, LLC, represents, without contradiction, that it is the successor by merger to Gulf Coast Interests, Inc., and it perfected the appeal in this cause.

2. Comerica Bank–Texas later became Comerica Bank.

("Comerica"), secured by a deed of trust to the land "TOGETHER WITH all the improvements now or hereafter erected on the property, all easements, appurtenances, and fixtures now or hereafter a part of the property." Comerica purchased a mortgagee policy of title insurance from Stewart Title on September 26, 2001, with a coverage amount equaling the original principal amount of the promissory note.

Aspen filed an affidavit claiming a lien on January 23, 2003, a "restated mechanic's lien" on June 10, 2003, and a "second restated mechanic's lien" on August 19, 2003. In the document filed on August 19, 2003, Aspen claimed a statutory lien on the land, improvements, and removables, and a constitutional mechanic's and materialman's lien against the land and improvements, in the amount of $845,000, for the provision of general construction material and labor to construct improvements to the property from March 2002 through August 2003.[3]

Frame defaulted on the promissory note, and, on August 12, 2003, Comerica noticed the property for foreclosure sale to take place on September 2, 2003. Aspen began negotiating with Comerica about their relative lien priorities and then, on August 29, 2003, filed suit against Frame and Comerica. That same day, Comerica sold the note and deed of trust to Gulf Coast for $4,000,000. On September 2, 2003, Gulf Coast went forward with the scheduled foreclosure sale and purchased the property itself for $2,000,000, in the form of a credit against the outstanding note.

Aspen promptly amended its suit, naming Gulf Coast as a party. In the suit, Aspen claimed that it had had an oral contract with Frame to make improvements to the house and that it had delivered materials and performed labor on the property from June 18, 1997 until August 2003. Aspen asserted that it had a mechanic's and materialman's lien on the property that commenced on June 18, 1997, the date that Aspen began construction of improvements to the house. The alleged inception date of Aspen's lien thus pre-dated the date of Comerica's note and the date of the title policy. Aspen sought:

(1) a declaratory judgment that its lien was superior to Comerica's lien and, therefore, to that of Gulf Coast;

(2) an order of foreclosure on the lien on the property and improvements;

(3) a constructive trust on the proceeds of the foreclosure sale, if it went forward;

and, alternatively, if the trial court found that Comerica's lien on the land and improvements was superior to Aspen's, then

(4) foreclosure on the fixtures that could be removed without damage, including palm trees, pool equipment, air conditioning units, electrical control panels, appliances, wine cooler units, a fireplace mantel, decorative columns, mahogany columns and paneling, custom carved moldings, an elevator, light fixtures, bathtubs or whirlpools, stained glass domes and panels, window treatments, a steam unit, a dry sauna, water heaters, safes, cabinets, marble or granite or composite countertops, plumbing valves and fixtures, exterior stone (not installed), antique entry doors, wrought-iron fencing, landscape plants, carpet in the guest house, and windows and doors.

---

3. Aspen also included language stating that the second restated mechanic's lien did not constitute a waiver of the January 23, 2003 affidavit or the lien filed June 10, 2003.

Gulf Coast provided Stewart Title with notice of the Aspen lawsuit by a letter, dated September 16, 2003, in which it demanded that Stewart Title provide indemnification against the claims in the lawsuit and a defense to Comerica and Gulf Coast. A copy of the amended petition was enclosed. Gulf Coast also stated that any answer or responsive pleading that it might file while waiting for a response regarding what action Stewart Title proposed to take was without waiver as to its rights under the policy. Stewart Title acknowledge receipt of Gulf Coast's letter "inquiring about the ... policy" and requested the completion of a proof-of-loss form so that it might evaluate the "inquiry."

Gulf Coast, using its own legal counsel, filed an original answer and counterclaim. Stewart Title later provided counsel to defend Gulf Coast on October 14, 2003, but limited that representation to defending Gulf Coast; the representation did not include the prosecution of the counterclaim.

On October 23, 2003, the lawyer provided by Stewart Title informed Gulf Coast by letter that it appeared that Aspen's mechanic's liens as to the property had been extinguished by the foreclosure sale and that a motion for partial summary judgment could be prepared as to those claims. However, he also wrote that Aspen might have a claim for "removables," but that there was a question as to whether such a claim was covered by the policy. He referred Gulf Coast to Stewart Title's representative.

Stewart Title's representative wrote Gulf Coast on October 30, 2003, asking for more information on the claimed "removables" and affirming that Stewart Title was investigating whether such claim was covered by the policy and whether it would result in compensable loss. Stewart Title reserved its right to deny coverage as to the "claim for priority to removables." According to Gulf Coast, Stewart Title also informed it by telephone that Stewart Title would contribute "zero" to any settlement of the Aspen lawsuit.

On November 17, 2003, Gulf Coast entered into a settlement agreement with Aspen regarding Aspen's liens against the property and all improvements thereon. Gulf Coast agreed to pay Aspen $300,000, and Aspen agreed to dismiss its claims against Gulf Coast with prejudice and to execute and to file a release of liens. Gulf Coast made a separate agreement, with a company affiliated with Aspen, to complete the work on the house.

On December 30, 2003, Stewart Title sent a letter to Gulf Coast denying coverage. It informed Gulf Coast that, as there was no longer any claim pending against Gulf Coast's interest in the property because of Aspen's dismissal with prejudice, Gulf Coast's claim under the policy had been resolved without any loss being demonstrated. The letter also noted that Stewart Title had not provided written consent to the settling of the dispute with Aspen and so any loss experienced by Gulf Coast resulting from the settlement was not covered by the policy.

Gulf Coast then sued Stewart Title, alleging that Stewart Title had breached the insurance contract and its duty of good faith and fair dealing. Stewart Title filed a traditional motion for summary judgment asserting that the policy did not cover claims made against an insured by a contractor who furnished and was not paid for "removables"—improvements that could be removed without causing material damage to land, the pre-existing improvements, or the improvements themselves. Stewart Title contended that, as a matter of law, the items that were the subject of Aspen's claims were personal property, not part of the real property described in the

policy; those items were therefore not covered by the policy; and Stewart Title thus had no duty to indemnify Gulf Coast and did not breach the insurance contract or the duty of good faith and fair dealing.

Gulf Coast also filed a traditional motion for partial summary judgment and a response to Stewart Title's motion for summary judgment, asserting that the policy insured Gulf Coast against loss or damage sustained by the lack of priority of Gulf Coast's lien over any mechanic's lien having its inception on or before the date of the policy. It alternatively argued that, even if the title policy insured only against a lack of priority when a mechanic's lien was against the real property described by the policy, coverage still existed because "removables" are not personal property once they are affixed to the land, but are part of the real property. Gulf Coast asked the trial court to deny Stewart Title's motion for summary judgment and to rule, as a matter of law, that Stewart Title had breached its contract by refusing to pay Gulf Coast the amount owed under the title policy.

The trial court signed an order granting Stewart Title's motion for summary judgment and entering a take-nothing judgment against Gulf Coast.

### Standard of Review

In four issues, Gulf Coast contends that the trial court erroneously granted Stewart Title's motion for summary judgment and erroneously denied Gulf Coast's motion for partial summary judgment. One of Gulf Coast's four issues is a broad issue questioning whether the trial court erred in entering judgment as a matter of law against Gulf Coast. Although we recognize that such a broad issue is authorized,[4] an appellant must nevertheless also present argument and supporting authorities in support of that issue. *See McCoy v. Rogers,* 240 S.W.3d 267, 272 (Tex.App.-Houston [1st Dist.] 2007, pet. denied). Consequently, we review the arguments actually raised and briefed on appeal, but liberally construe them so as "to obtain a just, fair and equitable adjudication of the rights of the litigants." *See* TEX.R.APP. P. 38.1(f), 38.9; *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex. 1989); *McCoy,* 240 S.W.3d at 272.

We review a trial court's decision to grant or to deny a motion for summary judgment de novo. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.,* 253 S.W.3d 184, 192, 199 (Tex.2007) (citing rule for review of grant of summary judgment and reviewing denied cross-motion for summary judgment under same standard). Although a denial of summary judgment is not normally reviewable, we may review such a denial when both parties move for summary judgment and the trial court grants one motion and denies the other. *Id.* at 192. When the trial court's ruling granting one summary judgment motion necessarily denies another pending motion for summary judgment on the same issue, such as here, we imply the ruling of denial. *See Frank's Int'l, Inc. v. Smith Int'l, Inc.,* 249 S.W.3d 557, 559 n. 2 (Tex.App.-Houston [1st Dist.] 2008, no pet.). In our review of such cross-motions, we review the summary judgment evidence presented by each party, determine all questions presented, and render the judgment that the trial court should have rendered. *Tex. Mun. Power Agency,* 253 S.W.3d at 192 (citing *Comm'r Court v. Agan,* 940 S.W.2d 77, 81 (Tex.1997)).

Under the traditional summary judgment standard, the movant has the burden to show that no genuine issues of

---

4. *See Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970).

material fact exist and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co., Inc.,* 690 S.W.2d 546, 548 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true, and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon,* 690 S.W.2d at 548–49. A defendant moving for summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). If the order granting the summary judgment does not specify the grounds upon which judgment was rendered, we must affirm the summary judgment if any of the grounds in the summary judgment motion is meritorious. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000).

## Discussion

▮ Gulf Coast contends that, as a matter of law, the policy provided coverage for Aspen's claims because the title policy insured the priority of the lien of the insured mortgage over any other liens. Gulf Coast argues that Aspen's mechanic liens were superior to Gulf Coast's lien; therefore, loss or damage from Aspen's claims was covered under the title policy, and, consequently, the trial court erred in granting summary judgment against Gulf Coast on the basis that Aspen's claims were not covered by the policy. Alternatively, Gulf Coast argues that, even if the policy did not insure the priority of the lien of the insured mortgage over any other liens, but instead only insured the priority of Gulf Coast's lien over other liens attaching to the real property, Aspen's claims were nevertheless covered by the policy because the subject items of Aspen's claims were part of the realty, not personal property. Gulf Coast also asserts that because there was coverage, Stewart Title breached the policy by refusing to pay for losses sustained by Gulf Coast because of Aspen's claims and that the trial court should have granted Gulf Coast's motion for partial summary judgment against Stewart Title.

Stewart Title responds that losses or damages from Aspen's claims were not covered by the policy because Aspen's claims involved items that could be removed without material damage to the land and improvements, *i.e.,* "removables," and the that policy covered only claims against the land, not claims regarding personal property. Implicit is the argument that the policy only insures the priority of the lien of the insured mortgage against other liens that attach to the land that is subject to the mortgage lien. Stewart Title asserts that "removables" are personal property, not part of the land as that term is defined in the policy; therefore, Aspen's claims were not covered by the title policy and Stewart Title had no duty to indemnify Gulf Coast as to Aspen's claims. Stewart Title also argues that, even assuming that Aspen's claims were covered by the policy, Gulf Coast was not entitled to a partial summary judgment against Stewart Title because Gulf Coast failed to show that any loss was suffered under the policy, which Stewart Title argues is a necessary prerequisite to the duty to indemnify.

## A. Construction of the policy

The title insurance policy provided, subject to exclusions, exceptions, and the conditions and stipulations of the policy, that, as of September 21, 2001, Stewart Title insured Comerica "and each successor in ownership of the indebtedness secured by the insured mortgage" against loss or

damage, not exceeding $4,319,731.39 (the amount of the note), sustained or incurred by the insured by reason of the following:

1. Title to the estate or interest described in Schedule A [fee simple in the River Oaks property] being vested other than as stated therein;

2. Any defect in or lien or encumbrance on the title;

3. Lack of a right of access to and from the land;

4. The invalidity or unenforceability of the lien of the insured mortgage upon the title;

5. The priority of any lien or encumbrance over the lien of the insured mortgage;

6. Lack of priority of the lien of the insured mortgage over any statutory or constitutional mechanic's, contractor's, or materialman's lien for labor or material having its inception on or before Date of Policy;

7. The invalidity or unenforceability of an assignment of the insured mortgage provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens;

8. Lack of good and indefeasible title.

The policy also provides that Stewart Title would pay the cost, attorney's fees and expenses incurred in defense of the title or the lien of the insured mortgage as insured, but only to the extent provided in the conditions and stipulations. Expressly excluded were "liens ... which resulted in no damage or loss" to the insured.

We construe an insurance contract by the same rules of construction as other contracts. *Am. Motorists Ins. Co. v. Occidental Chem. Corp.*, 16 S.W.3d 140, 145 (Tex.App.-Houston [1st Dist.] 2000,

pet. denied). Our primary concern is to ascertain the true intent of the parties. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). To do so, we must examine and consider the entire contract "in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Id.* (emphasis in original). If an insurance contract can be given more than one reasonable interpretation, it is ambiguous, and we adopt the interpretation that most favors coverage; an intent to exclude coverage must be expressed in "clear and unambiguous language." *Am. Motorists Ins.*, 16 S.W.3d at 145.

We first note that the enumerated provisions of coverage provide indemnity for losses or damages falling into three categories: those related to (1) the quality of the title, (2) the exercise of various rights under the title or lien, and (3) the priority of the lien on the insured mortgage over other liens or encumbrances. There are two provisions in the insuring clause falling under the last category. The first provision (hereinafter "paragraph 5") provides coverage for loss or damages caused by reason of

[t]he priority of any lien or encumbrance over the lien of the insured mortgage.

The second (hereinafter "paragraph 6") provides coverage for losses or damages caused by reason of the

[l]ack of priority of the lien of the insured mortgage over any statutory or constitutional mechanic's, contractor's, or materialman's lien for labor or material having its inception on or before Date of Policy[.]

Gulf Coast directs our attention to paragraph 5 and argues that it demonstrates that the title policy insured the priority of the mortgage lien over any other lien. Gulf Coast then argues that Aspen's liens

were superior to Gulf Coast's lien, to the extent that the improvements made by Aspen could be removed without material injury to the land and pre-existing improvements or to the improvements themselves. *See First Nat'l Bank v. Whirlpool Corp.*, 517 S.W.2d 262, 269 (Tex.1974). Therefore, according to Gulf Coast, because Aspen's liens as to removable improvements were superior to Gulf Coast's lien, Stewart Title was required to indemnify Gulf Coast for any loss or damage arising from the priority of Aspen's liens.

Stewart Title's posture is that losses or damages arising out of Aspen's mechanic's liens were not covered by the policy because the liens were to items that could be removed, *i.e.*, "removables," and therefore not "a claim to the land that was insured," but a claim to "items of personal property." [5] Stewart Title's implicit position is that the policy insures the priority of the mortgage lien only over other liens that attach to the land. Stewart Title's argument is premised on its contention that the title policy affords coverage only "for risks and claims 'against the land that is insured.'" Its basis for this contention is a clause in Schedule "A" to the policy that provides that "[t]he estate or interest in the land that is insured as encumbered by the insured mortgage is: FEE SIMPLE," and the conditions and stipulations of the policy, which define land, in relative part, as "the land described or referred to in Schedule A, and improvements affixed thereto that by law constitute real property." According to Stewart Title, if the "risk [or] claim" is not "against the land,"

as land is defined in the policy, there is no coverage.

Although we agree that the paragraphs of the insuring clause must be read in light of Schedule A and the conditions and stipulations, we disagree that such provisions require us to read the insuring clause so as to limit coverage of loss or damage to "risks and claims 'against the land that is insured.'" Such a narrow interpretation is unsupported by the plain language of the policy. Neither the conditions and stipulations nor the insuring clause limits coverage exclusively to loss or damage by reason of "risk and claims 'against the land that is insured.'" Rather, the paragraphs of the insuring clause provide eight specific circumstances against which Stewart Title would indemnify loss or damage. These involve claims against the title ("the land that is insured"), but also situations related to the exercise of various rights under the title or lien and disputes related to the priority of the lien of the insured mortgage over other liens or encumbrances. The salient question as to this last area of coverage is whether the other lien has priority over the lien of the insured mortgage. If the other lien has priority, the policy clearly provides indemnity for any losses or damages arising therefrom.

Paragraph 5 deals generally with claims made by holders of any liens, mechanic's or other types, which are superior to the lien of the insured mortgage, such as those that pre-date the recording of the mortgage lien. Paragraph 6, however, specifically addresses superior mechanic's liens

---

5. Actually, Aspen asserted liens against the land and improvements for its work and materials and only asserted a lien against the "removables" as an alternative argument if the trial court did not find that its lien against the land and improvements was superior to that of Comerica and Gulf Coast. Therefore, Aspen actually made "a claim against the land." Stewart Title's motion for summary judgment, however, discussed only Aspen's claimed lien against removables, and Gulf Coast did not contend that the motion for summary judgment did not address the asserted liens against the land and improvements. Accordingly we do not discuss Aspen's other claimed liens.

that have an inception date [6] on or prior to the date of the *policy,* not the date of the *mortgage lien.* This is significant because it provides for coverage for mechanic's liens whose inception date is *subsequent* to the date of the *mortgage lien,* but *prior* to the date of the *policy.*

■ In general, mechanic's liens whose inception is subsequent to the date of a deed-of-trust lien will be subordinate to the deed-of-trust lien. *See Diversified Mortgage v. Lloyd D. Blaylock General Contractor, Inc.,* 576 S.W.2d 794, 806 (Tex. 1978). However, Texas statutes and case law provide that mechanic's liens whose inception date is subsequent to the recording of a deed-of-trust lien will, nevertheless, have priority over the prior recorded deed-of-trust lien in one narrow instance.

Under Texas Property Code section 53.123, entitled "Priority of Mechanic's Lien over other Liens,"

> a mechanic's lien attaches to the house, building, improvements, or railroad property in preference to any prior lien, encumbrance, or mortgage on the land on which it is located, and the person may have the house, building, improvement, or any piece of the railroad property sold separately .... [however t]he mechanic's lien does not affect any lien, encumbrance, or mortgage on the land or improvement at the time of the inception of the mechanic's lien, and the holder of the lien, encumbrance, or mortgage

need not be made a party to a suit to foreclose the mechanic's lien.

TEX. PROP.CODE ANN. § 53.123(a),(b) (Vernon 2007). The Texas Supreme Court has reconciled the apparently contradictory language that appears in section 53.123 by holding that such language grants a priority to a mechanic's lien on improvements over a prior lien, encumbrance, or mortgage on the land when the improvements made could be removed without material injury to the land and pre-existing improvements or to the improvements themselves. *Whirlpool Corp.,* 517 S.W.2d at 269 (dealing with predecessor statute).

■ A statutory mechanic's lien may only attach to land and items that have become annexed to land, such as improvements (including fixtures),[7] not to chattel. *See* TEX. PROP.CODE ANN. § 53.022 (Vernon 2007); *Whirlpool Corp.,* 517 S.W.2d at 266 (holding that statutory mechanic's lien was meant to encompass "realty and such personal property as has been incorporated or consumed in the construction or repair thereof or delivered for such purposes"). However, chattels that have been incorporated into the realty become "fixtures" and are subject to a statutory mechanic's lien. *Whirlpool Corp.,* 517 S.W.2d at 266–67. A statutory mechanic's lien may therefore attach to items that have become fixtures and such lien will be superior to a prior deed-of-trust lien when the fixtures can be removed without material injury to the land and pre-existing improvements or to the fixtures themselves.[8] *See id.* at 269.

---

**6.** Under Texas Property Code section 53.124(a), the time of inception of a mechanic's lien, for the purposes of section 53.123, is "the commencement of improvements or delivery of materials to the land on which the improvements are to be located and on which the materials are to be used." TEX PROP.CODE ANN. § 53.124(a) (Vernon 2007).

**7.** The class of "improvements" is broader than that the class of "fixtures," which it

incorporates, but both share the characteristic of requiring annexation to realty. *See Reames v. Hawthorne–Seving, Inc.,* 949 S.W.2d 758, 761 (Tex.App.-Dallas 1997, pet. denied).

**8.** The fact that an improvement that is a fixture is "removable"—that is, can be removed without material damage to the land, pre-existing improvements, or the fixture itself— does not preclude it from being a fixture for

Paragraph 6 of the insuring clause covers loss or damage arising from "a statutory or constitutional mechanic's, contractor's, or materialman's lien for labor or material" having its inception (statutorily defined in section 53.124(a)) on or before the date of the policy, when such lien has priority over the lien of the insured mortgage (as provided for by the language of section 53.123 and its interpretation by Texas courts). Such a "mechanic's lien" will have priority over any prior lien, including a "lien of the insured mortgage," when the "mechanic's lien" is on improvements (including fixtures) that can be removed without material injury to the land and pre-existing improvements or to the improvements themselves, *i.e.*, "removable improvements." *See Whirlpool Corp.*, 517 S.W.2d at 269; *see also* Tex. Prop.Code Ann. § 53.123. Thus, paragraph 6 is specifically meant to provide indemnity for loss or damage arising from a "mechanic's lien" on "removable improvements" that had its inception on or before the date of the policy.

To interpret the insuring clause of the policy so as to exclude coverage when an asserted mechanic's lien is on removable improvements would render paragraph 6 superfluous and meaningless. The only circumstance under which a prior-in-time "lien of the insured mortgage" would "lack ... priority ... over any ['mechanic's lien'] having its inception on or before [the] Date of [the title] Policy" is when the "mechanic's lien" is on removable improve-

ments. *See Whirlpool Corp.*, 517 S.W.2d at 269; *see also* Tex. Prop.Code Ann. § 53.123. We will not interpret the policy so as to nullify specific coverage provided in a distinct insuring paragraph, thus rendering the language in such paragraph meaningless, in the absence of "clear and unambiguous language" in the policy expressing an intent to exclude such coverage.[9] *See Coker*, 650 S.W.2d at 393; *Am. Motorists Ins.*, 16 S.W.3d at 145.

Accordingly, we conclude that the title policy, pursuant to section 6 and within the extent of its provisions, provides indemnity for losses or damages resulting from mechanic's liens on removable improvements.

## B.  Stewart Title's motion for summary judgment

By its first and third issues, Gulf Coast argues that the trial court erred in rendering summary judgment for Stewart Title. Both Gulf Coast and Stewart Title agree that Aspen's claims included a lien on "removables." Stewart Title's motion for summary judgment was premised entirely on its contention that it had negated an essential element of each of Gulf Coast's claims by establishing that the policy did not cover losses or damages arising out of the assertion of mechanic's liens attaching to "removables." Because the policy did, in fact, cover mechanic's liens attaching to removable improvements (including fixtures), the trial court could not grant a summary judgment on Stewart Title's sole ground.[10]

the purposes of the attachment of a mechanic's lien and the priority of a mechanic's lien over a deed-of-trust lien. *See First Nat'l Bank v. Whirlpool Corp.*, 517 S.W.2d 262, 266, 269 (Tex.1974) (holding that dishwashers and disposals were "fixtures," and so subject to a mechanic's lien, and further holding that, because they could be removed without damage to land, pre-existing improvements, or the

fixtures themselves, mechanic's lien on them had priority over prior deed-of-trust lien).

9.  The policy includes a "Schedule B," providing exceptions from coverage. There is no exception in Schedule B for mechanic's liens involving removable improvements.

10.  Given the procedural posture of the case, we cannot, and do not, decide whether Gulf Coast was entitled to indemnity for losses and

We sustain Gulf Coast's first and third issues and reverse the trial court's take-nothing summary judgment against Gulf Coast.

## C. Gulf Coast's motion for partial summary judgment

In its second and fourth issues, Gulf Coast asserts that the trial court erred in not granting its motion for partial summary judgment seeking a finding that Stewart Title breached its contract by not paying for losses sustained by Gulf Coast by reason of the priority of Aspen's lien. This issue has not been briefed separately from the coverage issue, apart from arguments regarding loss. We therefore decline to address issues two and four and remand the case for further proceedings without addressing the merits of Gulf Coast's motion for partial summary judgment, except insofar as we have resolved the legal question of coverage of a mechanic's lien on removable improvements under the policy. *See* Tex.R.App. P. 38.1(i).

## Conclusion

We reverse the judgment of the trial court and remand this cause for further proceedings.

damages arising from Aspen's claims or to what extent Aspen's claims involved removable improvements (including fixtures).