**AMERICAN MOTORISTS INSURANCE COMPANY,**
Appellant,

v.

**OCCIDENTAL CHEMICAL CORPORATION,**
Appellee.

No. 01–98–00632–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 30, 2000.

H. Dwayne Newton, Houston, for Appellant.

Barrett H. Reasoner, Houston, for Appellee.

Panel consists of Justices MIRABAL, WILSON, and ANDELL.

## OPINION

DAVIE L. WILSON, Justice.

This appeal presents a novel question of insurance coverage. The insured, Houston Scale Company, Inc., purchased a comprehensive general liability ("CGL") policy from appellant, American Motorists Insurance Company. Houston Scale contracted with appellee, Occidental Chemical Corporation, to name Occidental as an additional insured under the CGL policy; however, Houston Scale failed to name Occidental as an additional insured. When a personal injury suit was filed against Occidental, Occidental was unable to file a CGL insur-

ance claim with American Motorists because Occidental was not a named insured. At the time Houston Scale purchased the CGL policy, it also purchased a commercial catastrophe liability policy[1] from American Motorists which provides both (1) excess CGL coverage over the underlying CGL policy limits and (2) replacement CGL coverage if the underlying CGL policy does not apply. The commercial catastrophe policy defines the term "insured" under that policy to include a person or entity to which the primary insured—in this case Houston Scale—is contractually obligated to provide CGL insurance.

We must decide if Occidental, which was not named as an additional insured on the underlying CGL policy, can nonetheless file a claim under the replacement CGL coverage provisions of the commercial catastrophe policy. Because Houston Scale was contractually obligated to provided CGL insurance to Occidental, we hold that Occidental is an insured under the commercial catastrophe policy and, therefore, is entitled to file a claim with American Motorists under the replacement CGL coverage provisions.

The trial court rendered an interlocutory summary judgment in favor of Occidental, holding Occidental was an insured under the commercial catastrophe policy. The judgment became final when the trial court granted Occidental's request for attorney's fees. American Motorists contends the trial court erred in (1) granting Occidental's motion for summary judgment, (2) denying American Motorist's motion for summary judgment, and (3) awarding attorney's fees to Occidental. We affirm.

### Factual and Procedural Background

Nasrollah Ghaemi sued Occidental for injuries he sustained while working as an employee for Houston Scale. At the time of Ghaemi's injury, he was performing work at Occidental's facility pursuant to a purchase order agreement between Hous-

ton Scale and Occidental. The underlying suit was settled between Occidental and Ghaemi for $500,000. Houston Scale had CGL and commercial catastrophe insurance policies from American Motorists. Later, Occidental sued Houston Scale and American Motorists, alleging that (1) Houston Scale breached the purchase order agreement for failing to name Occidental as an additional insured under CGL policy number 3MW 274 506–00 and (2) Occidental is an additional insured under commercial catastrophe policy number 3SB 036 884–00. Occidental has since settled with Houston Scale.

Both Occidental and American Motorists filed motions for summary judgment. The trial court granted Occidental's motion and denied American Motorists's motion, holding Occidental was an insured under the commercial catastrophe policy. Occidental and American Motorists then stipulated to the remaining facts except those concerning attorney's fees. The trial court eventually rendered a final judgment that awarded Occidental $500,000 in actual damages and $38,000 in attorney's fees.

### Was Occidental an Insured?

■ In points of error one and two, American Motorists contends the trial court erred in granting Occidental's motion for partial summary judgment and in denying its motion for summary judgment because Occidental is not an insured under the commercial catastrophe policy. A party moving for summary judgment has the burden of proving there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, we accept the evidence that favors the nonmovant as true and indulge all reasonable inferences and resolve all doubts in favor of the nonmov-

---

1. American Motorists describes its policy as "commercial catastrophe liability coverage."

ant. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). When the defendant produces competent evidence to negate a necessary element of the plaintiff's cause of action, to preclude summary judgment, the plaintiff must introduce evidence sufficient to raise a fact issue with respect to the element the defendant seeks to negate. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). We must affirm the judgment if any theory advanced by a defendant in its motion is meritorious. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex.1996). When both parties move for summary judgment and the trial court grants one motion and denies the other, as here, the losing party may challenge the denial of its motion as well as the grant to the prevailing party. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988); *Phillips Natural Gas Co. v. Cardiff*, 823 S.W.2d 314, 317 (Tex.App.— Houston [1st Dist.] 1991, writ denied). Under these circumstances, if we find the law contrary to the trial court, then we may reverse the trial court's judgment and render judgment for the appealing party. *See Jones*, 745 S.W.2d at 900.

Under the purchase order agreement, Houston Scale was obligated to provide Occidental CGL coverage for liability arising out Houston Scale's work for Occidental, with specific minimum coverage limits. The insurance requirements in the purchase order agreement are as follows:

INSURANCE: Prior to commencement of any of the work, CONTRACTOR and its subcontractors shall obtain and maintain at its sole cost and expense through out [sic] the performance of the work as follows:

A. Workers' Compensation....

B. Comprehensive General Liability with minimum limits of not less than $1,000,000 Property Damage and not less than $1,000,000/ $3,000,000 Bodily Injury. Such policies shall also provide:

1. Broad form property damage liability endorsement.

2. Contractor's Protective Liability.

3. Blanket contractual liability insurance sufficiently broad to include paragraph 8 "INDEMNIFICATION."

4. Completed operations liability insurance including Broad Form Property Damage provisions.

5. If the work includes excavating or blasting an endorsement eliminating the excavating and blasting exclusions.

C. Automobile Liability....

OWNER shall be named additional insured on policies specified in Section B and C and shall be furnished insurance certificates evidencing the coverages requested prior to the commencement of the WORK, the policies will not be canceled or materially changed without thirty (30) days written notice to OWNER.

Although CGL policy number 3MW 274 506–00 contained the types of coverage required by the contract, it is undisputed that Houston Scale did not name Occidental as an additional insured. As a result, Occidental sued American Motorists under commercial catastrophe policy number 3SB 036 884–00, claiming to be an additional insured under the replacement CGL coverage provisions (Coverage B).

To support its position that it is an additional insured under Coverage B, Occidental relies on two sections of the commercial catastrophe policy. Section III, paragraph 4 defines an "insured" as:

Any person or organization to whom or to which you are obligated by virtue of a written contract to provide such insurance as afforded by this Coverage Part [B] is an insured, but only with respect to liability arising out of "your work," "your product" and to property owned or used by you.

Occidental also relies on section I, paragraph 1 of Coverage B, that states in pertinent part:

> We will pay those sums that the insured becomes legally obligated to pay as damages, because of "bodily injury," "property damage," "personal injury," or "advertising injury" to which this insurance applies, but only if "underlying insurance" does not apply.[2]
>
> We will pay only the amount in excess of "Retained Limit.".... [3]

It is undisputed that the CGL policy is the "underlying insurance" for purposes of the commercial catastrophe policy.[4]

Occidental's argument against American Motorists is: (1) Because Houston Scale failed to name Occidental as an additional insured, the underlying insurance—the CGL policy—did not apply for purposes of section I, paragraph 1 of Coverage B of the commercial catastrophe policy; (2) Occidental was legally obligated to pay the $500,000 in damages for Ghaemi's injuries; (3) Ghaemi's injuries were injuries covered under Coverage B; (4) Occidental is an insured under Coverage B because Houston Scale, the primary insured under the commercial catastrophe policy, was contractually obligated to provide CGL insurance to Occidental; (5) therefore, American Motorists is directly liable to Occidental as a matter of law under the commercial catastrophe policy for the $500,000 judgment. In this appeal, American Motorists contests only the issue of Occidental's status as an insured under the commercial catastrophe policy.

■■■ On appeal, American Motorists argues that Occidental is not an insured under the commercial catastrophe policy because Occidental did not contractually require Houston Scale to provide "excess" coverage. By its characterization of the commercial catastrophe policy as an "excess" policy, American Motorists attempts to avoid the application of section III, paragraph 4 ("Any person or organization to whom or to which you are obligated by virtue of a written contract to provide such insurance as afforded by this Coverage Part is an insured, but only with respect to liability arising out of 'your work,' 'your product' and to property owned or used by you."). The ultimate issue, therefore, is

---

2. Section VI, paragraph 16 defines "Underlying Insurance" as follows:

   > "Underlying Insurance" means the self-insurance coverage or insurance afforded by the policies listed in the Schedule of Underlying Insurance contained in the Declarations, including their renewals and replacements.

   The declaration page of commercial catastrophe policy number 3SB 036 884–00 lists CGL policy number 3MW 274 506–00 as an underlying policy.

   Section V, paragraph 9 states the following conditions for "Underlying Insurance":

   > "Underlying Insurance"
   > a. In the event of bankruptcy, insolvency or financial impairment of the insurance company that issued the "underlying insurance," we shall be liable under Coverage A only to the extent we would otherwise have been liable.
   > b. If no coverage exists under the "underlying insurance" because you or any involved insured failed to comply with the policy terms and conditions, we shall be liable under Coverage A and Coverage B only to the extent we would have otherwise been liable.
   > c. If any aggregate limit in any "underlying insurance" becomes completely used up, you must see to it that we receive written notice as soon as practicable.

   The effect, if any, of these conditions is not an issue in dispute.

3. "Retained Limit is defined in section VI, paragraph 14:

   > "Retained Limit" means the greater of:
   > a. The amount stated in the Declarations as Retained Limit [$25,000]; or
   > b. The amount payable as damages under any other valid and collectible insurance available to the insured, other than "underlying insurance" or insurance purchased specifically in excess of this insurance.

4. If the CGL policy were not the "underlying insurance," then it would be considered "other insurance" under the commercial catastrophe policy, and the applicability of Coverage B would change.

whether the commercial catastrophe policy is a CGL policy.

American Motorists invites us to read the commercial catastrophe policy in the most narrow manner, suggesting that an insurance policy is not a CGL policy unless it provides primary CGL coverage. This, however, is not how the law dictates that we construe insurance contracts.

■■■ Insurance policies are subject to the same rules of construction as other contracts. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex.1997). The policy must be considered as a whole and effect given to each part if reasonably possible. *National Sec. Life & Cas. Co. v. Davis*, 152 Tex. 316, 257 S.W.2d 943, 944 (1953). The plain, ordinary, and generally accepted meaning of words is preferred unless the policy itself shows that the terms have been used in a technical or different sense. *Ramsay v. Maryland Am. Gen. Ins. Co.*, 533 S.W.2d 344, 346 (Tex.1976). If an insurance contract can be given more than one reasonable interpretation, it is ambiguous, and the interpretation that most favors coverage will be adopted. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex.1997). An intent to exclude coverage must be expressed in clear and unambiguous language. *See State Farm Fire & Cas. Co. v. Reed*, 873 S.W.2d 698, 699 (Tex.1993).

■ CGL policies are designed to protect an insured from losses arising out of business operations. 9 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE 3D § 129.1 (Dec.1997). The basic nature and requirements of the insurer's liability and the broad risk/loss provisions identifying the insureds, the premises and areas covered, and what constitutes an "accident" or "occurrence," are all contract provisions common to liability insurance in general.

*Id.* What is specific to basic CGL policies are the exclusions that limit the insurer's exposure and, thus, limit the coverage to business operations. *Id.*

American Motorists has not cited us to any authority, and we are aware of none, in which a general reference to CGL coverage has been construed to apply *only* to primary CGL coverage. The specific policy provision speaks only of "[a]ny ... organization ... to which you are obligated by virtue of a written contract to provide *such insurance as afforded by this Coverage Part* is an insured." (Emphasis added). The Coverage B provisions of the commercial catastrophe policy in this appeal are clearly a CGL policy designed to replace the underlying CGL policy in the event that underlying policy does not apply. Although American Motorists uses the term "excess" policy, a reference to the Coverage A provisions, in an attempt to narrow the definition of CGL coverage to a particular form of CGL coverage, we are unpersuaded. We therefore hold that the commercial catastrophe policy contains a type of CGL coverage contemplated by the parties to the purchase order agreement.[5]

We overrule points of error one and two.

### Was Occidental Entitled to Attorney's Fees?

■ In point of error three, American Motorists contends the trial court committed error in awarding attorney's fees under Civil Practice and Remedies Code section 38.001(8). TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1997). Section 38.001(8) allows a person to recover attorney's fees if the claim is for a written contract. *Id.* American Motorists argues that section 38.001(8) does not apply in this case due to the exemption for insurers in

---

5. We recognize the irony of this unusual fact pattern—due to the definition of "insured" in the commercial catastrophe policy, American Motorists must cover Occidental as an insured even though Occidental was not listed as an additional insured on the primary CGL

policy (and no "additional insured" premium was paid). American Motorists, of course, can modify future commercial catastrophe policies to include a specific exclusion for this happenstance.

section 38.006. TEX. CIV. PRAC. & REM.CODE ANN. § 38.006 (Vernon 1997).

The purpose of the exceptions set forth in section 38.006 was to exclude only those actions for which attorney's fees were already recoverable under a provision of the Insurance Code. *Texas Property & Cas. Ins. Guar. Ass'n v. Southwest Aggregates, Inc.*, 982 S.W.2d 600, 612–15 (Tex.App.—Austin 1998, no pet.); *see Whitehead v. State Farm Mut. Auto. Ins. Co.*, 952 S.W.2d 79, 87 (Tex.App.—Texarkana 1997), *rev'd on other grounds*, 988 S.W.2d 744 (Tex.1999). For this reason, Texas courts have construed section 38.006 and its precursor to preclude an award of attorney's fees only for those claims against insurance companies that allow for attorney's fees under other statutes, *i.e.*, when the recovery sought is based on an insurance theory for which attorney's fees are already available. Therefore, when the suit against the insurer is an action on the insurance contract, section 38.006 does not prevent an award of attorney's fees otherwise allowed under section 38.001(8). *Id.*

We overrule point of error three.

### Conclusion

We affirm the judgment of the trial court.