Opinion issued April 9, 2009
 


    











In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-07-00372-CV
____________

GCI GP, LLC, Appellant

V.

STEWART TITLE GUARANTY CO., Appellee




On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2004-66485



 
O P I N I O N

          Appellant, GCI GP, LLC (“Gulf Coast”), appeals a take-nothing judgment
rendered against it upon a traditional motion for summary judgment filed by appellee,
Stewart Title Guaranty Company (“Stewart Title”).


 We determine whether the trial
court erred in granting Stewart Title’s traditional motion for summary judgment. We
reverse the judgment and remand the cause.
BackgroundIn June 1997, Paul Frame bought a house on River Oaks Boulevard in Houston,
Texas, and hired Aspen Custom Builders (“Aspen”) to do renovations on the home. 
Aspen worked on the house from 1997 to August 2003, when it stopped due to non-payment. 
          On August 24, 2001, while the renovations were still ongoing, Frame executed
a promissary note in the amount of $4,319,731.39 to Comerica Bank-Texas



(“Comerica”), secured by a deed of trust to the land “TOGETHER WITH all the
improvements now or hereafter erected on the property, all easements, appurtenances,
and fixtures now or hereafter a part of the property.” Comerica purchased a
mortgagee policy of title insurance from Stewart Title on September 26, 2001, with
a coverage amount equaling the original principal amount of the promissary note.           Aspen filed an affidavit claiming a lien on January 23, 2003, a “restated
mechanic’s lien” on June 10, 2003, and a “second restated mechanic’s lien” on
August 19, 2003. In the document filed on August 19, 2003, Aspen claimed a
statutory lien on the land, improvements, and removables, and a constitutional
mechanic’s and materialman’s lien against the land and improvements, in the amount
of $845,000, for the provision of general construction material and labor to construct
improvements to the property from March 2002 through August 2003.


 
          Frame defaulted on the promissary note, and, on August 12, 2003, Comerica
noticed the property for foreclosure sale to take place on September 2, 2003. Aspen
began negotiating with Comerica about their relative lien priorities and then, on
August 29, 2003, filed suit against Frame and Comerica. That same day, Comerica
sold the note and deed of trust to Gulf Coast for $4,000,000. On September 2, 2003,
Gulf Coast went forward with the scheduled foreclosure sale and purchased the
property itself for $2,000,000, in the form of a credit against the outstanding note. 
          Aspen promptly amended its suit, naming Gulf Coast as a party. In the suit,
Aspen claimed that it had had an oral contract with Frame to make improvements to
the house and that it had delivered materials and performed labor on the property
from June 18, 1997 until August 2003. Aspen asserted that it had a mechanic’s and
materialman’s lien on the property that commenced on June 18, 1997, the date that
Aspen began construction of improvements to the house. The alleged inception date
of Aspen’s lien thus pre-dated the date of Comerica’s note and the date of the title
policy. Aspen sought:
(1)     a declaratory judgment that its lien was superior to Comerica’s
lien and, therefore, to that of Gulf Coast;
 
(2)     an order of foreclosure on the lien on the property and
improvements;
 
(3)     a constructive trust on the proceeds of the foreclosure sale, if it
went forward; 
 
and, alternatively, if the trial court found that
Comerica’s lien on the land and improvements was
superior to Aspen’s, then
 
(4)     foreclosure on the fixtures that could be removed without
damage, including palm trees, pool equipment, air conditioning
units, electrical control panels, appliances, wine cooler units, a
fireplace mantel, decorative columns, mahogany columns and
paneling, custom carved moldings, an elevator, light fixtures,
bathtubs or whirlpools, stained glass domes and panels, window
treatments, a steam unit, a dry sauna, water heaters, safes,
cabinets, marble or granite or composite countertops, plumbing
valves and fixtures, exterior stone (not installed), antique entry
doors, wrought-iron fencing, landscape plants, carpet in the guest
house, and windows and doors.
 
          Gulf Coast provided Stewart Title with notice of the Aspen lawsuit by a letter,
dated September 16, 2003, in which it demanded that Stewart Title provide
indemnification against the claims in the lawsuit and a defense to Comerica and Gulf
Coast. A copy of the amended petition was enclosed. Gulf Coast also stated that any
answer or responsive pleading that it might file while waiting for a response
regarding what action Stewart Title proposed to take was without waiver as to its
rights under the policy. Stewart Title acknowledge receipt of Gulf Coast’s letter
“inquiring about the . . . policy” and requested the completion of a proof-of-loss form
so that it might evaluate the “inquiry.”
          Gulf Coast, using its own legal counsel, filed an original answer and
counterclaim. Stewart Title later provided counsel to defend Gulf Coast on October
14, 2003, but limited that representation to defending Gulf Coast; the representation
did not include the prosecution of the counterclaim. 
          On October 23, 2003, the lawyer provided by Stewart Title informed Gulf
Coast by letter that it appeared that Aspen’s mechanic’s liens as to the property had
been extinguished by the foreclosure sale and that a motion for partial summary
judgment could be prepared as to those claims. However, he also wrote that Aspen
might have a claim for “removables,” but that there was a question as to whether such
a claim was covered by the policy. He referred Gulf Coast to Stewart Title’s
representative.
          Stewart Title’s representative wrote Gulf Coast on October 30, 2003, asking
for more information on the claimed “removables” and affirming that Stewart Title
was investigating whether such claim was covered by the policy and whether it would
result in compensable loss. Stewart Title reserved its right to deny coverage as to the
“claim for priority to removables.” According to Gulf Coast, Stewart Title also
informed it by telephone that Stewart Title would contribute “zero” to any settlement
of the Aspen lawsuit. 
          On November 17, 2003, Gulf Coast entered into a settlement agreement with 
Aspen regarding Aspen’s liens against the property and all improvements thereon.
Gulf Coast agreed to pay Aspen $300,000, and Aspen agreed to dismiss its claims
against Gulf Coast with prejudice and to execute and to file a release of liens. Gulf
Coast made a separate agreement, with a company affiliated with Aspen, to complete
the work on the house. 
          On December 30, 2003, Stewart Title sent a letter to Gulf Coast denying
coverage. It informed Gulf Coast that, as there was no longer any claim pending
against Gulf Coast’s interest in the property because of Aspen’s dismissal with
prejudice, Gulf Coast’s claim under the policy had been resolved without any loss
being demonstrated. The letter also noted that Stewart Title had not provided written
consent to the settling of the dispute with Aspen and so any loss experienced by Gulf
Coast resulting from the settlement was not covered by the policy. 
          Gulf Coast then sued Stewart Title, alleging that Stewart Title had breached the
insurance contract and its duty of good faith and fair dealing. Stewart Title filed a
traditional motion for summary judgment asserting that the policy did not cover
claims made against an insured by a contractor who furnished and was not paid for
“removables”—improvements that could be removed without causing material
damage to land, the pre-existing improvements, or the improvements themselves. 
Stewart Title contended that, as a matter of law, the items that were the subject of
Aspen’s claims were personal property, not part of the real property described in the
policy; those items were therefore not covered by the policy; and Stewart Title thus
had no duty to indemnify Gulf Coast and did not breach the insurance contract or the
duty of good faith and fair dealing.
          Gulf Coast also filed a traditional motion for partial summary judgment and a
response to Stewart Title’s motion for summary judgment, asserting that the policy
insured Gulf Coast against loss or damage sustained by the lack of priority of Gulf
Coast’s lien over any mechanic’s lien having its inception on or before the date of the
policy. It alternatively argued that, even if the title policy insured only against a lack
of priority when a mechanic’s lien was against the real property described by the
policy, coverage still existed because “removables” are not personal property once
they are affixed to the land, but are part of the real property. Gulf Coast asked the
trial court to deny Stewart Title’s motion for summary judgment and to rule, as a
matter of law, that Stewart Title had breached its contract by refusing to pay Gulf
Coast the amount owed under the title policy.
          The trial court signed an order granting Stewart Title’s motion for summary
judgment and entering a take-nothing judgment against Gulf Coast. 
Standard of Review
          In four issues, Gulf Coast contends that the trial court erroneously granted
Stewart Title’s motion for summary judgment and erroneously denied Gulf Coast’s
motion for partial summary judgment. One of Gulf Coast’s four issues is a broad
issue questioning whether the trial court erred in entering judgment as a matter of law
against Gulf Coast. Although we recognize that such a broad issue is authorized,


 an
appellant must nevertheless also present argument and supporting authorities in
support of that issue. See McCoy v. Rogers, 240 S.W.3d 267, 272 (Tex.
App.—Houston [1st Dist.] 2007, pet. denied). Consequently, we review the
arguments actually raised and briefed on appeal, but liberally construe them so as “to
obtain a just, fair and equitable adjudication of the rights of the litigants.” See Tex.
R. App. P. 38.1(f), 38.9; Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex.
1989); McCoy, 240 S.W.3d at 272. 
          We review a trial court’s decision to grant or to deny a motion for summary
judgment de novo. See Tex. Mun. Power Agency v. Pub. Util. Comm’n of Tex., 253
S.W.3d 184, 192, 199 (Tex. 2007) (citing rule for review of grant of summary
judgment and reviewing denied cross-motion for summary judgment under same
standard). Although a denial of summary judgment is not normally reviewable, we
may review such a denial when both parties move for summary judgment and the trial
court grants one motion and denies the other. Id. at 192. When the trial court’s ruling
granting one summary judgment motion necessarily denies another pending motion
for summary judgment on the same issue, such as here, we imply the ruling of denial. 
See Frank’s Int’l, Inc. v. Smith Int’l, Inc., 249 S.W.3d 557, 559 n.2 (Tex.
App.—Houston [1st Dist.] 2008, no pet.). In our review of such cross-motions, we
review the summary judgment evidence presented by each party, determine all
questions presented, and render the judgment that the trial court should have
rendered. Tex. Mun. Power Agency, 253 S.W.3d at 192 (citing Comm’r Court v.
Agan, 940 S.W.2d 77, 81 (Tex. 1997)). 
          Under the traditional summary judgment standard, the movant has the burden
to show that no genuine issues of material fact exist and that it is entitled to judgment
as a matter of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., Inc., 690
S.W.2d 546, 548 (Tex. 1985). In deciding whether there is a disputed material fact
issue precluding summary judgment, evidence favorable to the non-movant will be
taken as true, and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. Nixon, 690 S.W.2d at 548–49. A
defendant moving for summary judgment must conclusively negate at least one
essential element of each of the plaintiff’s causes of action or conclusively establish
each element of an affirmative defense. Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d
910, 911 (Tex. 1997). If the order granting the summary judgment does not specify
the grounds upon which judgment was rendered, we must affirm the summary
judgment if any of the grounds in the summary judgment motion is meritorious. FM
Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000). 
Discussion
           Gulf Coast contends that, as a matter of law, the policy provided coverage for
Aspen’s claims because the title policy insured the priority of the lien of the insured
mortgage over any other liens. Gulf Coast argues that Aspen’s mechanic liens were
superior to Gulf Coast’s lien; therefore, loss or damage from Aspen’s claims was
covered under the title policy, and, consequently, the trial court erred in granting
summary judgment against Gulf Coast on the basis that Aspen’s claims were not
covered by the policy. Alternatively, Gulf Coast argues that, even if the policy did
not insure the priority of the lien of the insured mortgage over any other liens, but
instead only insured the priority of Gulf Coast’s lien over other liens attaching to the
real property, Aspen’s claims were nevertheless covered by the policy because the
subject items of Aspen’s claims were part of the realty, not personal property. Gulf
Coast also asserts that because there was coverage, Stewart Title breached the policy
by refusing to pay for losses sustained by Gulf Coast because of Aspen’s claims and
that the trial court should have granted Gulf Coast’s motion for partial summary
judgment against Stewart Title.
           Stewart Title responds that losses or damages from Aspen’s claims were not
covered by the policy because Aspen’s claims involved items that could be removed
without material damage to the land and improvements, i.e., “removables,” and the
that policy covered only claims against the land, not claims regarding personal
property. Implicit is the argument that the policy only insures the priority of the lien
of the insured mortgage against other liens that attach to the land that is subject to the
mortgage lien. Stewart Title asserts that “removables” are personal property, not part
of the land as that term is defined in the policy; therefore, Aspen’s claims were not
covered by the title policy and Stewart Title had no duty to indemnify Gulf Coast as
to Aspen’s claims. Stewart Title also argues that, even assuming that Aspen’s claims
were covered by the policy, Gulf Coast was not entitled to a partial summary
judgment against Stewart Title because Gulf Coast failed to show that any loss was
suffered under the policy, which Stewart Title argues is a necessary prerequisite to
the duty to indemnify.
A.      Construction of the policy       
          The title insurance policy provided, subject to exclusions, exceptions, and the
conditions and stipulations of the policy, that, as of September 21, 2001, Stewart Title 
insured Comerica “and each successor in ownership of the indebtedness secured by
the insured mortgage” against loss or damage, not exceeding $4,319,731.39 (the
amount of the note), sustained or incurred by the insured by reason of the following:
1.       Title to the estate or interest described in Schedule A [fee simple
in the River Oaks property] being vested other than as stated
therein;
 
2.       Any defect in or lien or encumbrance on the title;
 
3.      Lack of a right of access to and from the land;
 
4.       The invalidity or unenforceability of the lien of the insured
mortgage upon the title;
 
5.       The priority of any lien or encumbrance over the lien of the
insured mortgage;
 
6.       Lack of priority of the lien of the insured mortgage over any
statutory or constitutional mechanic’s, contractor’s, or
materialman’s lien for labor or material having its inception on
or before Date of Policy;
 
7.       The invalidity or unenforceablity of an assignment of the insured
mortgage provided the assignment is shown in Schedule A, or
the failure of the assignment shown in Schedule A to vest title to
the insured mortgage in the named insured assignee free and
clear of all liens;
 
8.       Lack of good and indefeasable title.
 
          The policy also provides that Stewart Title would pay the cost, attorney’s fees
and expenses incurred in defense of the title or the lien of the insured mortgage as
insured, but only to the extent provided in the conditions and stipulations. Expressly
excluded were “liens . . . which resulted in no damage or loss” to the insured. 
          We construe an insurance contract by the same rules of construction as other
contracts. Am. Motorists Ins. Co. v. Occidental Chem. Corp., 16 S.W.3d 140, 145
(Tex. App.—Houston [1st Dist.] 2000, pet. denied). Our primary concern is to
ascertain the true intent of the parties. Coker v. Coker, 650 S.W.2d 391, 393 (Tex.
1983). To do so, we must examine and consider the entire contract “in an effort to
harmonize and give effect to all the provisions of the contract so that none will be
rendered meaningless.” Id. (emphasis in original). If an insurance contract can be
given more than one reasonable interpretation, it is ambiguous, and we adopt the
interpretation that most favors coverage; an intent to exclude coverage must be
expressed in “clear and unambiguous language.” Am. Motorists Ins., 16 S.W.3d at
145.    
          We first note that the ennumerated provisions of coverage provide indemnity
for losses or damages falling into three categories: those related to (1) the quality of
the title, (2) the exercise of various rights under the title or lien, and (3) the priority
of the lien on the insured mortgage over other liens or encumbrances. There are two
provisions in the insuring clause falling under the last category. The first provision
(hereinafter “paragraph 5”) provides coverage for loss or damages caused by reason
of [t]he priority of any lien or encumbrance over the lien of the insured
mortgage.
 
The second (hereinafter “paragraph 6”) provides coverage for losses or damages
caused by reason of the 
[l]ack of priority of the lien of the insured mortgage over any statutory
or constitutional mechanic’s, contractor’s, or materialman’s lien for
labor or material having its inception on or before Date of Policy[.]
 
          Gulf Coast directs our attention to paragraph 5 and argues that it demonstrates
that the title policy insured the priority of the mortgage lien over any other lien. Gulf
Coast then argues that Aspen’s liens were superior to Gulf Coast’s lien, to the extent
that the improvements made by Aspen could be removed without material injury to
the land and pre-existing improvements or to the improvements themselves. See First
Nat’l Bank v. Whirlpool Corp., 517 S.W.2d 262, 269 (Tex. 1974). Therefore,
according to Gulf Coast, because Aspen’s liens as to removable improvements were
superior to Gulf Coast’s lien, Stewart Title was required to indemnify Gulf Coast for
any loss or damage arising from the priority of Aspen’s liens.
          Stewart Title’s posture is that losses or damages arising out of Aspen’s
mechanic’s liens were not covered by the policy because the liens were to items that
could be removed, i.e., “removables,” and therefore not “a claim to the land that was
insured,” but a claim to “items of personal property.”


 Stewart Title’s implicit
position is that the policy insures the priority of the mortgage lien only over other
liens that attach to the land. Stewart Title’s argument is premised on its contention
that the title policy affords coverage only “for risks and claims ‘against the land that
is insured.’” Its basis for this contention is a clause in Schedule “A” to the policy that
provides that “[t]he estate or interest in the land that is insured as encumbered by the
insured mortgage is: FEE SIMPLE,” and the conditions and stipulations of the policy,
which define land, in relative part, as “the land described or referred to in Schedule
A, and improvements affixed thereto that by law constitute real property.” According
to Stewart Title, if the “risk [or] claim” is not “against the land,” as land is defined in
the policy, there is no coverage. 
           Although we agree that the paragraphs of the insuring clause must be read in
light of Schedule A and the conditions and stipulations, we disagree that such
provisions require us to read the insuring clause so as to limit coverage of loss or
damage to “risks and claims ‘against the land that is insured.’” Such a narrow
interpretation is unsupported by the plain language of the policy. Neither the
conditions and stipulations nor the insuring clause limits coverage exclusively to loss
or damage by reason of “risk and claims ‘against the land that is insured.’” Rather,
the paragraphs of the insuring clause provide eight specific circumstances against
which Stewart Title would indemnify loss or damage. These involve claims against
the title (“the land that is insured”), but also situations related to the exercise of
various rights under the title or lien and disputes related to the priority of the lien of
the insured mortgage over other liens or encumbrances. The salient question as to
this last area of coverage is whether the other lien has priority over the lien of the
insured mortgage. If the other lien has priority, the policy clearly provides indemnity
for any losses or damages arising therefrom.
          Paragraph 5 deals generally with claims made by holders of any liens,
mechanic’s or other types, which are superior to the lien of the insured mortgage,
such as those that pre-date the recording of the mortgage lien. Paragraph 6, however,
specifically addresses superior mechanic’s liens that have an inception date


 on or
prior to the date of the policy, not the date of the mortgage lien. This is significant
because it provides for coverage for mechanic’s liens whose inception date is 
subsequent to the date of the mortgage lien, but prior to the date of the policy. 
          In general, mechanic’s liens whose inception is subsequent to the date of a
deed-of-trust lien will be subordinate to the deed-of-trust lien. See Diversified
Mortgage v. Blaylock, 576 S.W.2d 794, 806 (Tex. 1978). However, Texas statutes
and case law provide that mechanic’s liens whose inception date is subsequent to the
recording of a deed-of-trust lien will, nevertheless, have priority over the prior
recorded deed-of-trust lien in one narrow instance. 
          Under Texas Property Code section 53.123, entitled “Priority of Mechanic’s
Lien over other Liens,”
a mechanic’s lien attaches to the house, building, improvements, or
railroad property in preference to any prior lien, encumbrance, or
mortgage on the land on which it is located, and the person may have the
house, building, improvement, or any piece of the railroad property sold
separately . . . . [however t]he mechanic’s lien does not affect any lien,
encumbrance, or mortgage on the land or improvement at the time of the
inception of the mechanic’s lien, and the holder of the lien,
encumbrance, or mortgage need not be made a party to a suit to
foreclose the mechanic’s lien. 
 
Tex. Prop. Code Ann. § 53.123(a),(b) (Vernon 2007). The Texas Supreme Court
has reconciled the apparently contradictory language that appears in section 53.123
by holding that such language grants a priority to a mechanic’s lien on improvements
over a prior lien, encumbrance, or mortgage on the land when the improvements
made could be removed without material injury to the land and pre-existing
improvements or to the improvements themselves. Whirlpool Corp., 517 S.W.2d at
269 (dealing with predecessor statute). 
          A statutory mechanic’s lien may only attach to land and items that have
become annexed to land, such as improvements (including fixtures),


 not to chattel. 
See Tex. Prop. Code Ann. § 53.022 (Vernon 2007); Whirlpool Corp., 517 S.W.2d
at 266 (holding that statutory mechanic’s lien was meant to encompass “realty and
such personal property as has been incorporated or consumed in the construction or
repair thereof or delivered for such purposes”). However, chattels that have been
incorporated into the realty become “fixtures” and are subject to a statutory
mechanic’s lien. Whirlpool Corp., 517 S.W.2d at 266–67. A statutory mechanic’s
lien may therefore attach to items that have become fixtures and such lien will be
superior to a prior deed-of-trust lien when the fixtures can be removed without
material injury to the land and pre-existing improvements or to the fixtures
themselves.


 See id. at 269. 
          Paragraph 6 of the insuring clause covers loss or damage arising from “a
statutory or constitutional mechanic’s, contractor’s, or materialman’s lien for labor
or material” having its inception (statutorily defined in section 53.124(a)) on or
before the date of the policy, when such lien has priority over the lien of the insured
mortgage (as provided for by the language of section 53.123 and its interpretation
by Texas courts). Such a “mechanic’s lien” will have priority over any prior lien,
including a “lien of the insured mortgage,” when the “mechanic’s lien” is on
improvements (including fixtures) that can be removed without material injury to the
land and pre-existing improvements or to the improvements themselves, i.e.,
“removable improvements.” See Whirlpool Corp., 517 S.W.2d at 269; see also Tex.
Prop. Code Ann. § 53.123. Thus, paragraph 6 is specifically meant to provide
indemnity for loss or damage arising from a “mechanic’s lien” on “removable
improvements” that had its inception on or before the date of the policy.  
          To interpret the insuring clause of the policy so as to exclude coverage when
an asserted mechanic’s lien is on removable improvements would render paragraph
6 superfluous and meaningless. The only circumstance under which a prior-in-time
“lien of the insured mortgage” would “lack . . . priority . . . over any [“mechanic’s
lien”] having its inception on or before [the] Date of [the title] Policy” is when the
“mechanic’s lien” is on removable improvements. See Whirlpool Corp., 517 S.W.2d
at 269; see also Tex. Prop. Code Ann. § 53.123. We will not interpret the policy
so as to nullify specific coverage provided in a distinct insuring paragraph, thus
rendering the language in such paragraph meaningless, in the absence of “clear and
unambiguous language” in the policy expressing an intent to exclude such coverage.



 See Coker, 650 S.W.2d at 393; Am. Motorists Ins., 16 S.W.3d at 145.
          Accordingly, we conclude that the title policy, pursuant to section 6 and within
the extent of its provisions, provides indemnity for losses or damages resulting from
mechanic’s liens on removable improvements.
B.      Stewart Title’s motion for summary judgment
 
          By its first and third issues, Gulf Coast argues that the trial court erred in
rendering summary judgment for Stewart Title. Both Gulf Coast and Stewart Title
agree that Aspen’s claims included a lien on “removables.” Stewart Title’s motion
for summary judgment was premised entirely on its contention that it had negated
an essential element of each of Gulf Coast’s claims by establishing that the policy
did not cover losses or damages arising out of the assertion of mechanic’s liens
attaching to “removables.” Because the policy did, in fact, cover mechanic’s liens
attaching to removable improvements (including fixtures), the trial court could not
grant a summary judgment on Stewart Title’s sole ground.


 
          We sustain Gulf Coast’s first and third issues and reverse the trial court’s take-nothing summary judgment against Gulf Coast.
C.     Gulf Coast’s motion for partial summary judgment
 
          In its second and fourth issues, Gulf Coast asserts that the trial court erred in
not granting its motion for partial summary judgment seeking a finding that Stewart
Title breached its contract by not paying for losses sustained by Gulf Coast by reason
of the priority of Aspen’s lien. This issue has not been briefed separately from the
coverage issue, apart from arguments regarding loss. We therefore decline to
address issues two and four and remand the case for further proceedings without
addressing the merits of Gulf Coast’s motion for partial summary judgment, except
insofar as we have resolved the legal question of coverage of a mechanic’s lien on
removable improvements under the policy. See Tex. R. App. P. 38.1(i).Conclusion
          We reverse the judgment of the trial court and remand this cause for further
proceedings.
 
 
 
                                                                        Tim Taft
Justice
 
 
Panel consists of Justices Taft, Bland, and Sharp.